MICHAEL J. WRIGHT (SBN: 231789)
mjwright@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614, UNITED STATES OF AMERICA
Telephone:  (949) 255-6986
Facsimile:  (949) 474-2060

Attorneys for Defendant
CREDIT CONTROL SERVICES, INC.,
D/B/A CREDIT COLLECTION SERVICES

# UNITED STATES DISTRICT COURT

# OF NORTHERN CALIFORNIA

| | |
|---|---|
| SAMUEL SMITH,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT COLLECTION SERVICE, EQUIFAX, TRANSUNION, EXPERIAN,<br><br>Defendant. | Case No. 3:22-cv-00782-LB<br><br>**ANSWER OF CREDIT CONTROL SERVICES, INC. WITH AFFIRMATIVE DEFENSES OF CREDIT COLLECTION SERVICE TO PLAINTIFF'S COMPLAINT** |

Defendant, Credit Control Services, Inc., d/b/a Credit Collection Services, ("CCS"), incorrectly sued herein as Credit Collection Service, by and through its undersigned counsel, Gordon Rees Scully Mansukhani, LLP, hereby answers the Complaint brought by Plaintiff, Samuel Smith ("Plaintiff").  In support thereof, CCS avers as follows:[1]

---

[1] As Plaintiff did not include numbered paragraphs in his complaint, CCS responds to each sentence of Plaintiff's Complaint as if it was a paragraph and includes a statement of the general allegation for ease of reference.

-1-
ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

1. As to the first sentence of Plaintiff's Complaint, alleging that CCS purchased a debt from Liberty Mutual Insurance Company ("Liberty Mutual"), denied. Rather, Liberty Mutual placed two of Plaintiff's accounts with CCS for collection. One such Liberty Mutual account Plaintiff incurred for automobile insurance and carried a balance of $2,661.54 at all times relevant to this action. Liberty Mutual assigned Plaintiff's automobile insurance account a policy number ending in 29-70. *See* Ex. A (invoice from Liberty Mutual to Plaintiff seeking payment in the amount of $2,661.54 for the account associated with Plaintiff's policy number ending in 29-70). The other account owed by Plaintiff that Liberty Mutual placed with CCS for collection was Plaintiff's renter's insurance policy account, assigned an account number ending in 26-75 and carrying a balance of $88.85 at all times relevant to this action. *See* Ex. B (invoice from Liberty Mutual to Plaintiff seeking payment in the amount of $88.85 for Plaintiff's renter's insurance policy, bearing a policy number ending in 26-75).[2]

2. As to the second sentence of Plaintiff's Complaint, alleging that Plaintiff's information was given to CCS by Liberty Mutual, admitted. CCS admits that Liberty Mutual placed Plaintiff's valid and delinquent automobile insurance and renter's insurance accounts with it for collection and provided information regarding Plaintiff and the accounts at the time of placement.

3. As to the third sentence of Plaintiff's Complaint, alleging that Plaintiff had a policy with Liberty Mutual for automobile and renter's insurance, admitted.

4. As to the fourth sentence of Plaintiff's Complaint, alleging that Plaintiff's insurance was cancelled in December 2019 because he found other insurance at better rates, denied. Plaintiff's auto policy with Liberty Mutual was cancelled due to non-payment on August 25, 2020. Plaintiff's renter's policy with Liberty Mutual was cancelled due to non-payment on June 7, 2020. CCS lacks

---

[2] CCS has no record of Plaintiff making any payments on either account after placement with CCS.

-2-
ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this sentence and therefore denies the same.

5. As to the fifth sentence of Plaintiff's Complaint, alleging that Plaintiff owes no money to Liberty Mutual or CCS, those claims are admitted in part and denied in part. CCS states the Plaintiff's valid and delinquent debts to Liberty Mutual have been due and owing at all times relevant to this action. CCS admits that Plaintiff does not owe any money directly to CCS.

6. As to the six sentence of Plaintiff's Complaint, denied. Plaintiff's automobile insurance policy was cancelled on August 25, 2020, while Plaintiff's renter's insurance policy was cancelled on June 7, 2020.

7. As to the seventh sentence of Plaintiff's Complaint, alleging that Plaintiff did not renew his contract with Liberty Mutual, have a contract with CCS or that any documentation exists reflecting Plaintiff's debts, admitted in part and denied in part. CCS admits it has no contract with Plaintiff. CCS denies that the total amount Plaintiff owes to Liberty Mutual on the two accounts is $2,749.00; rather the total amount due at all times relevant to this action was $2,750.39. CCS lacks knowledge and information sufficient to form a belief as to whether Plaintiff renewed his contracts with Liberty Mutual and therefore denies the same.

8. As to the eighth sentence of Plaintiff's Complaint, alleging that insurance companies do not continue coverage without receipt of payment, denied. CCS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this sentence and therefore denies the same.

9. As to the ninth sentence of Plaintiff's Complaint, alleging that nonpayment results in a lapse of coverage and cancellation of the policy, denied. CCS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this sentence and therefore denies the same.

10. As to the tenth sentence of Plaintiff's Complaint, alleging that neither CCS nor Liberty Mutual can provide documentation to validate the debts that he

-3-
ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

owed, denied. Attached hereto as Exhibits A & B are invoices from Liberty Mutual to Plaintiff showing that Plaintiff owed money on his accounts and that his accounts were terminated on August 25, 2020 (automobile insurance) and June 7, 2020 (renter's insurance).

11. As to the eleventh sentence of Plaintiff's Complaint, alleging that there is no record of a renewed contract beyond March 2020, denied. CCS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this sentence and therefore denies the allegations in this sentence.

12. As to the twelfth sentence of Plaintiff's Complaint, alleging "With Liberty Mutual Insurance Company," no response is required as it contains no allegations against CCS. To the extent that a response is necessary, denied.

13. As to the thirteenth sentence of Plaintiff's Complaint, alleging that there is no signature that binds Plaintiff to the services of Liberty Mutual or CCS, admitted in part and denied in part. CCS lacks knowledge or information sufficient to form a belief as to whether a signed contract exists between Plaintiff and Liberty Mutual and therefore denies the same. CCS admits that no written contract between Plaintiff and CCS exists.

14. As to the fourteenth sentence of Plaintiff's Complaint, alleging that no documentation exists reflecting Plaintiff's agreement to pay for the services of Liberty Mutual and CCS, admitted in part and denied in part. Documentation exists evidencing Plaintiff's debts incurred for the services of Liberty Mutual; CCS refers Plaintiff to Exhibits A & B hereto. CCS admits that no documentation exists showing that Plaintiff agreed to pay for the services of CCS.

15. As to the fifteenth sentence of Plaintiff's Complaint, alleging that there was no credit extended from either Liberty Mutual or CCS, admitted in part and denied in part. CCS admits that it extended no credit to Plaintiff. CCS affirmatively states that Plaintiff incurred two debts with Liberty Mutual that were due and owing at all times relevant to this action.

-4-
ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

16. As to the sixteenth sentence of Plaintiff's Complaint, alleging that CCS is a "debt buyer," not a "debt collector" under 15 U.S.C. § 1692a(6), denied. CCS denies these allegations as they call for conclusions of law. CCS refers all questions of law to the court. Further responding, CCS notes that Plaintiff does not assert claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

17. As to the seventeenth sentence of Plaintiff's Complaint, alleging that Liberty Mutual wanted Plaintiff to pay charges of $2,749.00 with no active coverage and a policy that ended in March 2020, denied. CCS affirmatively states that, at all times relevant to this action, Plaintiff owed debts to Liberty Mutual Insurance Company totaling $2,750.39. Further responding, Plaintiff's policies were terminated on August 25, 2020 (automobile insurance) and June 7, 2020 (renter's insurance). CCS denies any remaining allegations of this sentence.

18. As to the eighteenth sentence of Plaintiff's Complaint, alleging that Plaintiff terminated his coverage with Liberty Mutual in December 2019 to switch to a new insurance company, denied. CCS denies that Plaintiff terminated his Liberty Mutual policies in December 2019. CCS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this sentence and therefore denies the same.

19. As to the nineteenth sentence of Plaintiff's Complaint, alleging that Liberty Mutual continued to charge Plaintiff for a policy that did not exist because of "cancellation," denied. Plaintiff's policies continued until they lapsed for lack of payment, resulting in a balance due of $2,750.39.

20. As to the twentieth sentence of Plaintiff's Complaint, alleging that CCS purchased Plaintiff's debt, denied. CCS denies that it purchased Plaintiff's debt or debts.

21. As to the twenty-first sentence of Plaintiff's Complaint, alleging that CCS placed a "false inquiry" on his credit profile with Equifax, Transunion and

-5-
ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Experian, denied. CCS did not place any false information on Plaintiff's credit profile with any consumer reporting agency.

22. As to the twenty-second sentence of Plaintiff's Complaint, alleging that Plaintiff's credit profile has a negative inquiry of a "false" debt owed to CCS in the amount of $2,749.00, denied. CCS denies reporting any false information regarding Plaintiff to any consumer reporting agency. Further responding, CCS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this sentence and therefore denies the same.

23. As to the twenty-third sentence of Plaintiff's Complaint, alleging that information appearing on Plaintiff's credit profile lowered his credit score at each consumer reporting agency, denied. CCS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this sentence and therefore denies the same.

24. As to the twenty-fourth sentence of Plaintiff's Complaint, alleging that Plaintiff is asking the Court to permanently stop CCS from reporting a "false inquiry" of a debt he does not owe to CCS, admitted in part and denied in part. CCS admits that Plaintiff is attempting to assert a claim against CCS but denies any wrongdoing and denies that the relief Plaintiff requests is available.

25. As to the twenty-fifth sentence of Plaintiff's Complaint, in which Plaintiff seeks a penalty of $1,000 for each offense, admitted in part and denied in part. CCS admits that Plaintiff seeks monetary relief, but denies violating any law and denies any liability to Plaintiff.

26. As to the twenty-sixth sentence of Plaintiff's Complaint, alleging that Plaintiff suffered "defamation of character," denied. CCS denies defaming Plaintiff's character and denies any liability to Plaintiff.

27. As to the twenty-seventh sentence of Plaintiff's Complaint, alleging that Plaintiff's record was tarnished, denied. CCS denies engaging in any false reporting or violation of the law that would lead to Plaintiff's record being tarnished.

28. As to the twenty-eighth sentence of Plaintiff's Complaint, alleging that Plaintiff's record reflects being high risk and that he faced increased interest costs, denied. CCS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this sentence and therefore denies the same.

29. As to the twenty-ninth sentence of Plaintiff's Complaint, alleging that Plaintiff suffered damages due to being labeled as not creditworthy, denied. CCS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this sentence and therefore denies the same.

30. As to the thirtieth sentence of Plaintiff's Complaint, alleging that Plaintiff became aware of CCS when he tried to rent an apartment, denied. CCS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this sentence and therefore denies the same.

31. As to the thirty-first sentence of Plaintiff's Complaint, alleging that due to "false" reporting of a debt that doesn't exist between Plaintiff and CCS that is being reported, denied. CCS denies that it reported any debt as being owed by Plaintiff to CCS and denies engaging in any false reporting.

32. As to the thirty-second sentence of Plaintiff's Complaint, alleging that Plaintiff's rental application was denied, denied. CCS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this sentence and therefore denies the same.

33. As to the thirty-third sentence of Plaintiff's Complaint, alleging that Plaintiff named Equifax, Transunion and Experian in this action because they are enjoined with each other by contractual agreement, denied. CCS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this sentence and therefore denies the same.

34. As to the thirty-fourth sentence of Plaintiff's Complaint, alleging that CCS is paid for reporting information about consumers, denied. CCS denies that it is paid for reporting information to consumer reporting agencies. Further

-7-
ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

responding, CCS denies the allegations in Plaintiff's prayer for equitable relief. Specifically, CCS denies that Plaintiff's prayer for relief is appropriate in the absence of any viable claims.

35. As to the thirty-fifth sentence of Plaintiff's Complaint, alleging that Plaintiff apparently seeks to invoke the Court's equitable powers to require that CCS stop reporting his debt or debts, admitted in part and denied in part. CCS admits that Plaintiff so requests, but denies that any such relief is available in the absence of any wrongdoing on the part of CCS.

36. As to the thirty-sixth sentence of Plaintiff's Complaint, asking that the Court restore Plaintiff's credit score to the status quo, admitted in part and denied in part. CCS admits that Plaintiff so requests but denies that any such relief is available in the absence of any wrongdoing by CCS. CCS lacks knowledge and information as to what Plaintiff's credit scores were at any point relevant to this action and therefore denies Plaintiff's allegations regarding the same.

37. As to the thirty-seventh sentence of Plaintiff's Complaint, in which Plaintiff seeks monetary damages and equitable relief as well as a jury trial, admitted in part and denied in part. CCS admits that Plaintiff so requests, but denies that any such relief is available against CCS in the absence of any violations of the law.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to state claims upon which relief may be granted. CCS did not violate the California Unfair Competition Law, Business and Professions Code §§ 17200 *et seq.* (the "UCL"), the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* or the California Professional Code in the course of its collection efforts to recover on two valid and delinquent debt obligations owed by Plaintiff to Liberty Mutual Insurance Company. Therefore, Plaintiff's claims against CCS should be dismissed or withdrawn.

## SECOND AFFIRMATIVE DEFENSE

CCS affirmatively states that some or all of Plaintiff's claims are barred by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff has failed to plausibly allege any violation of the FCRA, the UCL or the California Professional Code and, therefore, is not entitled to attorney's fees or costs.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover any damages, or any recovery awarded should be reduced by the amount of damages that reasonably could have been avoided, because Plaintiff failed to take reasonable steps to mitigate his damages with respect to the matters alleged in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE

The conduct of CCS at all times complied with all applicable statutes, regulations and laws. Accordingly, the Complaint and each purported cause of action alleged therein against CCS is barred.

## SIXTH AFFIRMATIVE DEFENSE

CCS did not engage in any conduct intended to cause the Plaintiff mental anguish, humiliation or embarrassment or that was unfair and unconscionable.

## SEVENTH AFFIRMATIVE DEFENSE

CCS reserves the right to compel individual arbitration in this matter and affirmatively asserts this right.

## EIGHTH AFFIRMATIVE DEFENSE

If CCS violated the FCRA, UCL or California Professional Code, which it denies, Plaintiff has incurred no actual damages or any ascertainable loss as a result of the purported violation.

///
///

## NINTH AFFIRMATIVE DEFENSE

Any purported damages claimed by Plaintiff, which CCS denies, were due to the affirmative actions and/or omission of Plaintiff or others and does not give rise to any claim of damages against CCS.

## TENTH AFFIRMATIVE DEFENSE

CCS reserves the right to raise any other affirmative defenses not previously asserted in this Answer as they may arise through further investigation and discovery.

Defendant, Credit Control Services, Inc., d/b/a Credit Collection Services, incorrectly named herein as Credit Collection Service, respectfully requests that this Court deem this answer sufficient, dismiss all claims asserted against CCS and grant such other and further relief that the Court deems just and equitable.

Respectfully submitted this 2nd day of March, 2022.

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Michael J. Wright*
Michael J. Wright
Attorneys for Defendant
CREDIT CONTROL SERVICES, INC., D/B/A CREDIT COLLECTION SERVICES

ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon Rees Scully Mansukhani, LLP 5 Park Plaza, Suite 1100, Irvine, CA 92614. On March 2, 2022, I served the within documents:

**DEFENDANT CREDIT CONTROL SERVICES, INC.'S ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

☐ **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ **BY PERSONAL SERVICE:** by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ **BY ELECTRONIC ACCESS**: I hereby certify that the above document(s) was uploaded to the U.S. Central District Court website – through the CM/ECF efiling system into *Smith v. Credit Collection Service, et al.* and will be posted on the website by the close of the next business day and the webmaster will give e-mail notification to all parties.

☐ **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at Irvine, addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☒ **BY OVERNIGHT MAIL:** by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by FedEx as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

Samuel Smith
248 3rd St. #445
Oakland, CA 94607
*Plaintiff pro se*

-11-
ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

1   I declare under penalty of perjury under the laws of the State of California
2   that the above is true and correct.

3   I declare that I am employed in the office of a member of the Bar of this
4   court at whose direction the service was made.

5    Executed on March 2, 2022 at Westminster, California.

_____
Sandra Avants